**HARD DRIVE PRODUCTIONS, INC., Plaintiff,**

v.

**DOES 1–188, Defendants.**

**Case No. C–11–01566 JCS.**

United States District Court, N.D. California.

Aug. 23, 2011.

Brett Langdon Gibbs, Steele Hansmeier, PLLC, Mill Valley, CA, for Plaintiff.

**ORDER GRANTING DOE 24.5.180.56'S MOTION TO QUASH [Docket Nos. 13, 19, 20, 21]**

JOSEPH C. SPERO, United States Magistrate Judge.

**I. INTRODUCTION**

On June 21, 2011, Defendant John Doe at IP address 24.5.180.56 ("Doe 24.5.180.56") filed a Motion to Quash this Court's Order Granting Hard Drive Production's Application for Leave to Take Discovery Prior to Rule 26(f) Conference with Extended Joinder Discussion. Docket No. 19 (hereinafter, "June 21 Mot. to Quash"). The Defendant's Motion is GRANTED. Further, for the reasons stated in this order, the Court also GRANTS the other motions to quash pending in this action that is, Docket Numbers 13, 20 and 21. For the reasons stated, the Court also quashes all subpoenas seeking information regarding all defendants except Doe at IP address 173.55.54.77 (the "remaining Doe Defendant"), and severs and dismisses without prejudice all claims against all Does except the remaining Doe Defendant.

**II. BACKGROUND**

**A. Complaint**

Plaintiff filed this copyright infringement suit on March 31, 2011 against 188 separate Doe Defendants. Docket. No. 1 ("Complaint"). In the Complaint, Plaintiff alleges that Doe Defendants illegally reproduced and distributed Plaintiff's copyrighted video "Amateur Allure—Erin" ("the Work"), thereby violating the United States Copyright Act, 17 U.S.C. §§ 101–1332. Complaint at ¶¶ 7, 25–31. Plaintiff alleges that it used geolocation technology to trace the Internet Protocol ("IP") addresses of each Doe Defendant, thereby establishing that all Doe Defendants either reside or have committed copyright infringement in the State of California. *Id.* at ¶ 3. According to Plaintiff, all Doe Defendants participated in a "peer-to-peer" ("P2P") network in which the Defendants exchanged the Work using an internet file sharing method known as BitTorrent (hereinafter, "BitTorrent protocol" or "BitTorrent technology"), thereby taking part in a civil conspiracy to commit copyright infringement. *Id.* at ¶ 32–39. Plaintiff explains that

> ... the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

*Id.* at ¶ 11. According to Plaintiff, "peers" are "individual downloaders or distributors

of a particular file." *Id.* at ¶ 12. A "swarm" is a group of "peers" involved in downloading or distributing a particular file. *Id.* A "tracker" is a server which stores a list of "peers" in a "swarm." *Id.* Plaintiff states that each "swarm" is "unique to a particular file." *Id.* Plaintiff explains that the BitTorrent protocol functions as follows:

> First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

*Id.* at ¶ 13.

Plaintiff alleges that joinder of the Doe Defendants is proper in the present case because:

> [t]he nature of the BitTorrent distribution protocol necessitates a concerted action by many people in order to disseminate files, such as Plaintiff's Work ... [and] [t]he Doe Defendants are properly joined even if they were not engaged in a contemporaneous swarm because they have contributed to the chain of data distribution due to their prior involvement in like swarms.

*Id.* at ¶ 5. Plaintiff states that it knows Doe Defendants only by their IP addresses, which were identified by Plaintiff's agents "observ[ing] unlawful reproduction and distribution occurring among IP addresses

listed on Exhibit A ... via the BitTorrent Internet protocol." *Id.* at ¶ 8. Exhibit A to the Complaint lists the IP addresses of the Doe Defendants, as well as the date and time in which the Does at these IP addresses allegedly engaged in acts of infringement.

On March 31, 2011, Plaintiff initiated this lawsuit by filing a Complaint in which it asserted a federal claim for infringement of the Copyright Act and a state common law claim for civil conspiracy, based on the theory that the Doe Defendants conspired to commit copyright infringement. *Id.* at ¶¶ 30–31, 39. Plaintiffs seek an award for both injunctive and monetary relief. *Id.*

## B. Plaintiff's Motion For Leave to Take Early Discovery

Because Plaintiff knew the Doe Defendants only by their IP addresses, Plaintiff sought leave to take early discovery in order to subpoena the Internet Service Providers ("ISP") of the IP addresses associated with each of the 188 Doe Defendants to obtain the names, current and permanent addresses, telephone numbers, email addressees, and Media Access Control addresses ("MAC addresses") of the Doe Defendants. Plaintiff's *Ex Parte* Application for Leave to Take Expedited Discovery with Expanded Joinder Discussion, Docket No. 10 at 3. ("Application").

In support of the Application, Plaintiff submitted the declaration of Peter Hansmeier, a technician for Media Copyright Group, LLC ("MCG"), explaining how Plaintiff had identified the IP addresses of Doe Defendants. Application, Ex. A, (Declaration of Peter Hansmeier in Support of *Ex Parte* Application for Leave to Take Expedited Discovery ("Hansmeier Decl.")) at ¶¶ 12–20. Hansmeier stated that he used a "tracker" to locate a "swarm" associated with the copyrighted Work, and was subsequently able to use

software to collect data, including IP addresses, of each "peer" within the "swarm." *Id.* at ¶¶ 14–15. Although Plaintiff was able to identify the IP addresses of Doe Defendants, it was not able to capture any other identifying information. *Id.* at ¶ 15. Hansmeier stated that only the ISPs can access the Doe Defendants' names and addresses. *Id.* at ¶ 21. Hansmeier further stated that "without expedited discovery . . . Plaintiff will have no means of serving [Doe] Defendants with the complaint and summons . . . and no means to protect its creative works from ongoing infringement." *Id.* Plaintiff urged that expedited discovery was of critical importance because ISPs vary in the period of time that they preserve identifying information of users of specific IP addresses. *Id.* at ¶ 22; Application at 5.

## C. Order Granting Leave to Take Early Discovery

On May 6, 2011, the Court granted Plaintiff's request for leave to take discovery prior to the Rule 26(f) Conference, authorizing Plaintiff to serve Rule 45 subpoenas on the ISPs named in Exhibit A of the Complaint. Order Granting Plaintiff's Application for Leave to Take Discovery Prior to Rule 26(f) Conference with Extended Joinder Discussion, Docket No. 12 ("Order"). The subpoenas required the ISPs to notify subscribers of the IP addresses whose information was to be released so that the subscribers would have an opportunity to file objections or motions to quash with the Court. *Id.*

## D. The Motion to Quash

On June 21, 2011, Doe 24.5.180.56 filed a Motion to Quash the subpoena, asking the Court to prohibit the ISP from releasing Doe 24.5.180.56's name, correct (and permanent) address, telephone number, e-mail address, and Media Access Control address pursuant to the subpoena. June 21 Mot. to Quash. Doe 24.5.180.56 claims

that the subpoena for this information should be quashed and the claims asserted against him dismissed because joinder of the Doe Defendants is improper. *Id.* at ¶ 1. Doe 24.5.180.56 further asserts that the June 21 Motion to Quash should be granted on the basis of the unreliability of IP and MAC address tracing, and the difficulty of determining who is actually using an IP address in light of the fact that some home networks are not secure and that even within the household, and it is impossible to determine which approved user is responsible for a particular download. *Id.* at ¶¶ 2–5. Doe 24.5.180.56 also questions Plaintiff's ability to sue for copyright infringement because Plaintiff has not provided a copyright registration number or official document from the United States Copyright Office. *Id.* at ¶ 6.

With respect to the question of joinder of the Doe Defendants, Doe 24.5.180.56 asserts that the claims against him (as well as those asserted against the other Does) qualify as a unique case because each Doe has a separate network configuration, hardware and ISP, requiring individual investigation and giving rise to different defenses. *Id.* at ¶ 1. Therefore, he asserts, joinder is improper. Doe 24.5.180.56 also makes several arguments addressing the unreliability of the technology used to identify the individuals responsible for the alleged copyright infringement. *Id.* at ¶ 2–5. Doe 24.5.180.56 first argues that the Court should grant the motion to quash and dismiss the claims against him because there exist "software solutions that allow users to 'spoof' or impersonate false IP addresses." *Id.* at ¶ 2. Doe 24.5.180.56 similarly argues that MAC address tracing is unreliable because ISPs are unable to detect users' MAC addresses, most ISPs do not store MAC address data, and there are ways to fake MAC addresses. *Id.* at ¶ 3. Doe 24.5.180.56 asserts that because MAC address tracing is

unreliable, Plaintiff will be unable to verify who downloaded the copyrighted material and where the copyrighted material was downloaded. *Id.*

Doe 24.5.180.56 cites several cases in support of his Motion to Quash. First, Doe 24.5.180.56 cites *VPR Internationale v. Does 1–1017*, in which the Central District of Illinois denied a motion to certify interlocutory review of the court's denial of plaintiff's motion for expedited discovery. *Id.* at ¶ 7(A). The plaintiff in *VPR Internationale* sought early discovery to subpoena the identifying information of the subscribers of IP addresses who allegedly infringed upon the plaintiff's copyright of a motion picture. *See VPR Internationale*, Case No. 11–2068 (C.D. Ill., filed Apr. 29, 2011). The court denied the request for early discovery and later denied the plaintiff's motion for interlocutory review because the "court will not be used to advance a 'fishing expedition by means of a perversion of the purpose and intent' of class action." *Id.* at 3. Second, Doe 24.5.180.56 cites *Patrick Collins v. Does 1–1219*, 2010 WL 5422569 (N.D.Cal. Dec. 28, 2010), and *On the Cheap v. Does 1–5011*, as examples of cases in which the court granted motions to quash. June 21 Mot. to Quash at ¶ 7(B). Third, Doe 24.5.180.56 cites *BMG Music v. Does 1–203*, 2004 WL 953888 (E.D.Pa. Apr. 2, 2004), as an example of a case involving similar allegations that was dismissed because of improper joinder. June 21 Mot. to Quash at ¶ 7(C). Fourth, Doe 24.5.180.56 cites *Millenium TGA, Inc. v. Does 1–800*, Case No. 10–05604 (N.D. Ill., filed Sept. 2, 2010), as an example of a case in which the court found improper joinder and improper venue where unidentified Doe defendants were sued for copyright infringement. June 21 Mot. to Quash ¶ 7(F). Doe 24.5.180.56 also cites *First Time Videos, LLC v. Does 1–500*, *Id.* at ¶ 7(D), a list of orders from West Virginia, *Id.* at ¶ 7(E), and a list of cases from various districts, *Id.* at ¶ 7(G),

without providing legal citations or explanations of the relevance of the cases to the present Motion.

### E. Opposition to the Motion to Quash

On June 30, 2011, Plaintiff filed a Response in Opposition to Movant's Motion to Quash Subpoena. Docket No. 24 ("Opposition"). In the Opposition, Plaintiff argues that Doe 24.5.180.56's Motion to Quash should be denied because: (1) the argument regarding misjoinder is improper at this stage of the case; (2) a subpoena may not be quashed based on arguments that address the merits of the case; and (3) Doe 24.5.180.56's copyright registration argument is frivolous. Plaintiff further asserts that Doe 24.5.180.56's reliance on unrelated authority is not a basis for quashing the subpoenas. Opposition at 1–2.

First, Plaintiff argues that Doe 24.5.180.56's challenge to joinder is premature because Plaintiff's allegations that the "Doe Defendants have infringed Plaintiff's copyrighted Work ... through the same file-sharing protocol ... [has] been held sufficient to sustain joinder while discovery of Doe Defendants' identities is underway." *Id.* at 2 (citing *MCGIP, LLC v. Does 1–18*, 2011 WL 2181620 at *4 (N.D.Cal. June 2, 2011)). Plaintiff argues that Doe 24.5.180.56 can only raise his misjoinder claim after the Doe Defendants have been named and served. *Id.* at 3.

Second, Plaintiff asserts that Doe 24.5.180.56's arguments based on the reliability of IP tracing technology go to the merits of the case and thus are not relevant to "whether [a] subpoena is valid and enforceable." *Id.* (citing *Voltage Pictures, LLC v. Does 1–5,000*, —— F.Supp.2d ——, ——, 2011 WL 1807438 at *4 (D.D.C. May 12, 2011)). Plaintiff argues that any defenses to the lawsuit may be raised only

after Doe 24.5.180.56 has been identified and named a party in the lawsuit. *Id.* at 4.

Third, Plaintiff asserts that Doe 24.5.180.56's copyright registration argument is frivolous because Plaintiff has alleged that it has a currently pending copyright application for the Work in the United States Copyright Office, *Id.* (citing Complaint at ¶ 20), and the Ninth Circuit has found that the United States Copyright Office's receipt of a complete copyright application satisfies the registration requirement of a copyright infringement action. *Id.* at 4 (citing *Cosmetic Ideas, Inc. v. IAC/Interactivecorp,* 606 F.3d 612, 621 (9th Cir.2010)).

## F. Voluntary Dismissal of Doe Defendants 1–5

On August 10, 2011, Plaintiff voluntarily dismissed Does 1–5 from the action pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure.

## III. MAGISTRATE JURISDICTION UNDER 28 U.S.C. § 636

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge has jurisdiction to hear and decide nondispositive matters without the consent of the parties. A motion to quash is normally considered a non-dispositive matter, *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 116 (2d Cir.2010), and therefore, the undersigned has jurisdiction to rule on Doe 24.5.180.56's motion to the extent he seeks to quash Plaintiff's subpoena. In addition, a magistrate judge has jurisdiction to consider the question of whether of joinder of unserved defendants is proper, including whether unserved defendants should be severed and dismissed from the action, because defendants who have not been served are not considered "parties" under 28 U.S.C. § 636(c). *See Neals v. Norwood,* 59 F.3d 530, 532 (5th Cir.1995) (holding that magistrate judge had jurisdiction to dismiss prison inmate's action under 42 U.S.C. § 1983 as frivolous

without consent of defendants because defendants had not been served yet and therefore were not parties); *see also United States v. Real Property,* 135 F.3d 1312, 1317 (9th Cir.1998) (holding that magistrate judge had jurisdiction to enter default judgment in an in rem forfeiture action even though property owner had not consented to it because 28 U.S.C. § 636(c)(1) only requires the consent of the parties and the property owner, having failed to comply with the applicable filing requirements, was not a party). Here, Plaintiff has consented to magistrate jurisdiction and the Doe Defendants have not yet been served. Therefore, the Court finds that it has jurisdiction under 28 U.S.C. § 636(c) to decide the issues raised in the instant motion.

## IV. ANALYSIS

### A. Legal Standard

#### 1. Authority to Quash Subpoenas

Under Rule 45(c)(3), a court must modify or quash a subpoena that, *inter alia,* "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A). A court may modify or quash a subpoena that, *inter alia,* requires disclosing confidential information. Fed.R.Civ.P. 45(c)(3)(B).

Furthermore, Rule 26(c)(1) provides:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1). The court also must:

limit the frequency or extent of discovery otherwise allowed by [the Federal Rules of Civil Procedure] or by local rule if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues.

Fed.R.Civ.P. 26(b)(2)(C)(iii).

### 2. Permissive Joinder

Under Rule 20(a)(2), permissive joinder of defendants is proper if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed.R.Civ.P. 20(a)(2). Rule 20(a)(2) is designed to promote judicial economy and trial convenience. *See Mosley v. Gen. Motors,* 497 F.2d 1330, 1332–33 (8th Cir.1974). The Supreme Court has found that "[u]nder the [Federal] Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218.

Rule 21 further provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R.Civ.P. 21.

### 3. Discretionary Severance

◼ The Ninth Circuit has found that "even once [the Rule 20(a)] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Company,* 232 F.3d 1271, 1296 (9th Cir.2000) (citing *Desert Empire Bank v. Insurance Co. of North America,* 623 F.2d 1371, 1375 (9th Cir.1980) (finding that the district court did not abuse its discretion when it severed certain plaintiff's claims without finding improper joinder)). Under Rule 20(b), the district court may sever claims or parties in order to avoid prejudice. Fed. R.Civ.P. 20(b). Courts have also exercised their discretion to sever where "[i]nstead of making the resolution of [the] case more efficient ... joinder would instead confuse and complicate the issues for all parties involved." *See, e.g., Wynn v. National Broadcasting Company,* 234 F.Supp.2d 1067, 1088 (C.D.Cal.2002) (finding that even where Rule 20 requirements for joinder are satisfied, the Court may exercise its discretion "to sever for at least two reasons: (1) to prevent jury confusion and judicial inefficiency, and (2) to prevent unfair prejudice to the [defendants]") (citing *Coleman,* 232 F.3d at 1296).

### 4. Motions Brought by Pro Se Litigants

◼ The Supreme Court has found that a federal court should be liberal in its construction of a *pro se* litigant's motion, and may even "ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category," so long as the *pro se* litigant is warned of the recharacterization. *See Castro v. United States,* 540 U.S. 375, 381–84, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003) (collecting cases).

### B. Whether Joinder of Doe Defendants Should be Permitted

Although Doe 24.5.180.56 has not brought a motion to sever or a motion to dismiss, in order to rule on Doe

24.5.180.56's Motion to Quash, the Court must address the questions of whether Rule 20(a)(2) joinder of Doe Defendants in this action is proper under Rule 20(a) and further, whether there are grounds for exercising the discretionary power to sever under Rule 20(b).

### 1. Joinder Under Rule 20(a)

With the advent of BitTorrent technology, courts have grappled with the question of whether joinder of Doe defendants who engage in acts of infringement using BitTorrent technology should be treated in the same way as joinder of defendants in connection with earlier P2P technologies. A growing number of decisions by district courts offer guidance on this question, though they have reached different conclusions. Although some courts have distinguished BitTorrent from prior P2P technologies and on that basis have permitted joinder of multiple Does who are a part of single "swarm," at least at the early stages of the case, several judges in the Northern District of California have recently found that use of BitTorrent, like earlier P2P technologies, is not sufficient to satisfy the requirements of Rule 20(a), *even if* the Doe defendants are part of a single swarm. For the reasons stated below, the Court finds that the latter approach is more persuasive. Therefore, the Court concludes that permissive joinder of the Doe Defendants is improper under Rule 20(a).

### a. P2P Case Law Prior to BitTorrent

In the case law addressing alleged copyright infringement using P2P technologies that predate BitTorrent technology, numerous courts have found that the alleged use of the same P2P network by a group of Doe defendants to commit copyright infringement is insufficient to sustain permissive joinder. *See IO Group, Inc. v. Does 1–19*, 2010 WL 5071605, at *3 (N.D.Cal. Dec. 7, 2010) (collecting cases). A review of some of these cases is instructive.

In *LaFace Records, LLC. v. Does 1–38*, the plaintiffs owned copyrights in various sound recordings and sued 38 Doe defendants on the basis that they had illegally downloaded and distributed copyrighted material from the Internet "using an online media distribution network, a peer-to-peer network." 2008 WL 544992, at *1 (E.D.N.C. Feb. 27, 2008). A magistrate judge permitted earlier discovery permitting the plaintiffs to serve Rule 45 subpoenas on the ISPs of the Doe defendants and numerous Does brought motions asking the court to quash the plaintiffs' subpoenas and vacate the early discovery order on the basis that they were improperly joined. *Id.* at *2. The district court found that the Doe defendants were improperly joined under Rule 20(a)(2) because the copyright infringement claims did not arise out of the same transaction, occurrence or series of transactions or occurrences, rejecting the plaintiffs' contention that the copyright infringement arose out of the same transaction, occurrence, or series of transactions or occurrences because "each defendant used the same ISP as well as some of the same P2P networks." *Id.* Rather, the court concluded that "merely committing the same type of violation in the same way does not link defendants together for purposes of joinder." *Id.* The court therefore severed all of the Doe defendants but one and deemed the subpoenas served on the severed Doe defendants' ISP to be "no longer valid." *Id.* at *3. The court did not immediately dismiss the severed Doe defendants, allowing plaintiffs twenty days to file new, separate actions against each of the severed Doe defendants. *Id.* However, if the plaintiff did not timely file new, separate actions, the court ordered the claims against each of the severed Doe defendants to be dismissed. *Id.*

Similarly, in *Interscope Records* the court found joinder to be improper under

Rule 20(a)(2) even though Doe defendants were alleged to have disseminated plaintiffs' copyrighted works through the same P2P network. 2004 U.S. Dist. LEXIS 27782, at *2, *19 (M.D.Fl. Apr. 1, 2004). The court disagreed with the plaintiffs' assertion that joinder was proper because "the [d]efendants 'have participated in a common scheme or pattern of behavior,' via the downloading and dissemination of [p]laintiffs' sound recordings using the same network, 'without which no [d]efendant would have been able to commit much of the infringing activity.'" *Id.* at *10. Instead, the court found "the same transaction requirement [of Rule 20(a)] ... is not satisfied by the fact that the [d]efendants accessed the songs through [the same P2P network]," and the court recommended that all claims "except those by the first plaintiff against the first defendant be severed ... [and that] the other plaintiffs and [claims] against other defendants be dismissed." *Id.* at *19, *16.

In *Elektra Entertainment Group, Inc. v. Does 1–9*, plaintiff alleged in its complaint that Doe defendants committed copyright infringement by disseminating plaintiff's copyrighted work via a P2P network. *Elektra Entertainment Group, Inc. v. Does 1–9*, 2004 WL 2095581, at *1 (S.D.N.Y. Sept. 8, 2004). The plaintiff identified the ISP addresses of the Doe defendants, and then filed an *ex parte* motion to take expedited discovery. *Id.* The court initially granted the *ex parte* motion to take early discovery to identify all the Doe defendants. *Id.* However, Doe defendant number 7 moved to quash the subpoena served upon his ISP, and to sever himself from the action. *Id.* The court denied the motion to quash and the motion to dismiss, but granted Doe defendant number 7's motion to sever himself from the action, finding that the mere use of the same P2P protocol was insufficient to establish that plaintiff's copyright infringement claims were logically related for the

purposes of a Rule 20(a)(2) joinder. *Id.* at *6–7. The court further ordered that plaintiff file a separate action against Doe number 7. *Id.* at *8.

In *Fonovisa, Inc. v. Does 1–9*, the court found Rule 20(a)(2) joinder to be improper where sixteen plaintiffs alleged that nine defendants had committed copyright infringement of more than one copyrighted work. 2008 WL 919701 (W.D.Pa. Apr. 3, 2008). Initially, the *Fonovisa* court granted plaintiff's *ex parte* application for leave to take early discovery on the basis that the defendants were alleged to have committed copyright infringement using the same P2P network. *Id.* Then, after a Doe defendant filed a motion to dismiss (which the court construed as a motion for severance), the court found joinder to be improper under Rule 20(a)(2) because, *inter alia*, "plaintiffs have failed to show that one or more of the [d]efendants has actually downloaded songs from another [d]efendant, which could conceivably link the [d]efendants or show they acted in concert." *Id.* at *1, *5. The court held that "given the different factual contexts of the alleged infringement for each [d]efendant and the absence of any evidence showing joint action by [d]efendants, other than their use of the same peer-to-peer network to access the copyright recordings and the same ISP ... [p]laintiffs have failed to satisfy the requirements for permissive joinder under Rule 20(a)." *Id.* at *6. Finding joinder to be improper under Rule 20(a)(2), the court granted the Doe defendant's motion for severance, severing "all claims except those raised by [p]laintiffs against [d]oe # 3," and dismissing without prejudice "[p]laintiff's claims against [d]efendants [d]oes # 1–2 and 4–9." *Id.* at *11.

### b. Application of the P2P Case Law Framework to BitTorrent Technology

With the advent of the BitTorrent technology, some courts have accepted the as-

sertion of plaintiff that Doe defendants who have participated in the same swarm to download a copyrighted work may properly be joined under Rule 20(a), notwithstanding the authority that reaches a contrary conclusion with respect to earlier P2P technologies (discussed above). *See, e.g., MCGIP, LLC. v. Does 1–18*, 2011 WL 2181620 (N.D.Cal. June 2, 2011); *Voltage*, — F.Supp.2d at ——, 2011 WL 1807438 at *5 (D.D.C. May 12, 2011); *Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F.Supp.2d 332 (D.D.C. Mar. 22, 2011) (collecting cases).

In *MCGIP*, for example, the court denied a Doe defendant's motion to quash a subpoena issued by the plaintiff to the Doe defendants' ISPs seeking to identify the Doe defendants in the case. *MCGIP*, 2011 WL 2181620, at *1 (N.D.Cal. June 2, 2011). The court rejected the Doe defendant's argument that the motion to quash should be granted on the basis of improper joinder, reasoning that while joinder might be found improper at a later stage of the case, when the identities of the Does had been determined, the allegation "that the Doe [d]efendants have infringed [p]laintiff's copyright through 'the same file sharing software program [*i.e.*, BitTorrent] that operates through simultaneous and sequential computer connections and data transfers among the users'" was sufficient to satisfy Rule 20(a) at the pleading stage. *Id.*

Similarly, in *Voltage*, the court found joinder under Rule 20(a)(2) was proper where the Doe defendants allegedly downloaded and distributed plaintiff's copyrighted movie using BitTorrent technology. *See Voltage*, — F.Supp.2d at ——, 2011 WL 1807438 at *5 (D.D.C. May 12, 2011). After the court granted the plaintiff leave to subpoena the ISPs in order to identify the putative defendants, 119 putative defendants filed motions to quash the plaintiff's subpoenas. *Id.* at —— – ——,

at *1–2. Seven of the putative defendants argued that they should be dismissed for improper joinder. *Id.* at ——, at *4. The court, however, found joinder to be proper. *Id.* In permitting Rule 20(a)(2) joinder, the court relied on the standard set forth in *United Mine Workers*, where the Court held that "[u]nder the [Federal] Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am.*, 383 U.S. at 724, 86 S.Ct. 1130. The court also cited Rule 20(a)(2)(A), stating that it "essentially requires claims asserted against joined parties to be 'logically related.'" *Voltage*, — F.Supp.2d at ——, 2011 WL 1807438, at *5 (citing *Disparte v. Corporate Exec. Bd.*, 223 F.R.D. 7, 10 (D.D.C.2004)). The *Voltage* court stated:

> the plaintiff allege[d] that the putative defendants used the BitTorrent file-sharing protocol to distribute illegally the plaintiff's motion picture ... This file-sharing protocol 'makes every downloader also an uploader of the illegally transferred file(s). This means that every ... user who has a copy of the infringing copyrighted material on a torrent network must necessarily also be a source of download for that infringing file.'

*Id.* (quoting plaintiff's complaint). The court therefore permitted the Rule 20(a)(2) joinder because

> [b]ased on [plaintiff's allegations], the plaintiff's claims against the putative defendants are logically related at this stage in the litigation .... [and] at this procedural juncture the plaintiff has sufficiently alleged that its claims against the putative defendants potentially stem

from the same transaction or occurrence, and are logically related.

*Id.*

Finally, in *Call of the Wild Movie,* after granting the plaintiffs' motion for expedited discovery to obtain identifying information about the Doe defendants in three pending copyright infringement cases, the court denied the ISPs' motion to quash or modify the subpoena. *Call of the Wild Movie,* 770 F.Supp.2d 332, 338 (D.D.C. Mar. 22, 2011). The ISPs and amici urged the court to quash the subpoenas based, in part, upon improper joinder, arguing "that engaging in 'separate but similar behavior by individuals allegedly using the Internet to commit copyright infringement' does not satisfy Rule(a)(2)(A)'s requirement that the claim asserted against the joined defendants arise out of the same transaction, occurrence, or series of transactions or occurrences.' " *Id.* at 342–43. However the court rejected this argument. Like the *Voltage* court, the court in *Call of the Wild Movie* found that Rule 20(a)(2)(A) "essentially requires claims asserted against joined parties to be 'logically related' ... [and that] [t]his is a flexible test and courts seek the 'broadest possible scope of action.' " *Id.* at 342 (citing *Disparte,* 223 F.R.D. at 10; *Lane v. Tschetter,* 2007 WL 2007493, at *7 (D.D.C. July 10, 2007)). The court then found plaintiffs' allegation

> that the BitTorrent file-sharing protocol 'makes every downloader also an uploader of the illegally transferred file(s)'... [and] that the 'nature of a BitTorrent protocol [is that] any seed peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file'

was sufficient to establish that "the plaintiffs' claims against the defendants are log-

ically related." *Call of the Wild,* 770 F.Supp.2d at 343 (quoting complaint). The court further found the plaintiffs met the requirement that the claims against the putative defendants contain a common question of law or fact, and that joinder would not prejudice the parties or result in needless delay. *Id.* While the court recognized "that each putative defendant may later present different factual and substantive legal defenses ... that does not defeat, at this stage of the proceedings, the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B)." *Id.* at 344.

Several judges in the Northern District of California, however, have rejected the approach discussed above, finding that use of BitTorrent technology, like earlier P2P technologies, does not satisfy the requirements for permissive joinder. For example, in *Diabolic Video Productions,* Judge Grewal found Rule 20(a)(2) joinder improper where plaintiff alleged that 2,099 different defendants acted in concert to reproduce plaintiff's copyrighted film on forty-nine different days using the BitTorrent protocol. *Diabolic Video Productions,* 2011 WL 3100404, at *1 (N.D.Cal. May 31, 2011). There, the plaintiff attempted to join all Doe defendants in one action, seeking expedited discovery "to serve subpoenas on several enumerated ISPs to obtain the true identities of Doe [d]efendants for purpose of service in accordance with Fed. R.Civ.P. 4." *Id.* As a threshold matter, the court rejected the plaintiff's argument that the single transaction or series of closely-related transactions requirement under Rule 20(a)(2) was satisfied merely because all defendants joined a common "swarm" to upload or download the copyrighted film. *Id.* at *3. Instead, the court followed the general rule established by courts addressing alleged copyright infringement through the use of earlier P2P technologies: "the mere allegation that defendants

have used the same peer-to-peer network to infringe a copyrighted work is insufficient to meet the standards of joinder set forth in Rule 20." *Id.* The court rejected the plaintiff's contention that Rule 20(a)(2) joinder was proper because the plaintiff alleged that all Doe defendants "acted in cooperation with one another 'by agreeing to provide, and actually providing, on a P2P network, an infringing reproduction of at least substantial portions of Diabolic's copyrighted [m]otion [p]icture, in anticipation of the other [d]efendants doing likewise with respect to that work and/or other works.'" *Id.* Therefore, finding the Rule 20(a)(2) joinder to be impermissible, the court severed all Does but Doe 1 and reassigned the severed Does to an Article III judge with the recommendation the claims against them be dismissed. *Id.* at *5.

In *Pacific Century International,* Judge Ryu reached a similar result. *Pacific Century International v. Does 1–101,* 2011 WL 2690142 (N.D.Cal. July 8, 2011). There, the plaintiff sought expedited discovery to serve subpoenas on the ISPs of 101 Doe defendants who were alleged to have engaged in a civil conspiracy in order to commit copyright infringement of plaintiff's copyrighted work using BitTorrent technology. *Id.* The court found, as a threshold matter, that Rule 20(a)(2) joinder was improper because "the only commonality between copyright infringers of the same work is that each 'commit[ted] the exact same violation of the law in exactly the same way.'" *Pacific Century International,* 2011 WL 2690142, at *4 (N.D.Cal. July 8, 2011) (citing *LaFace Records,* 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008)). Furthermore, in addressing the plaintiff's civil conspiracy claim, the court found that:

> [a]lthough [p]laintiff explains the protocol and how it differs from its predecessor P2P programs, and specifically claims that [d]efendants have engaged in

a civil conspiracy ... [p]laintiff still has failed to demonstrate that it has 'any right to relief against [Defendants] ... arising out of the same transaction, occurrence, or series of transactions or occurrences.'

*Id.* (citing Fed.R.Civ.P. 20(a)(2)(A)). Accordingly, the court denied the plaintiff's request for expedited discovery as to all Doe defendants, granting instead expedited discovery on only Doe defendant 1, while severing and dismissing the remaining Does without prejudice for improper Rule 20(a)(2) joinder. *Id.* at *4.

In *Millennium TGA,* Judge Conti found Rule 20(a) joinder to be improper where the plaintiff alleged that twenty-one Doe defendants used BitTorrent to unlawfully reproduce and distribute plaintiff's copyrighted work, and sought expedited discovery on eight ISPs "to compel them to provide the name, address, telephone number, e-mail address, and media access control address of each [d]oe [d]efendant." *Millennium TGA v. Does 1–21,* 2011 WL 1812786, at *1 (N.D.Cal. May 12, 2011). The court denied the plaintiff's application to take early third-party discovery because "[p]laintiff has failed to establish that either its civil conspiracy claim or its copyright claim could survive a motion to dismiss." *Id.* at *3. In ruling that the plaintiff's claim could not survive a motion to dismiss, the court found Rule 20(a)(2) joinder of the Doe defendants impermissible because "the Doe [d]efendants' individual and separate alleged reproductions of Plaintiff's Work—which occurred over the span of twenty days—do not satisfy [the Rule 20(a)(2)] requirement." *Millennium TGA,* 2011 WL 1812786, at *3 (N.D.Cal. May 12, 2011).

Finally, in a recent order addressing a request for expedited discovery in the context of a copyright infringement action based on alleged use of BitTorrent by

numerous Doe defendants, Judge Grewal revisited the question of whether BitTorrent technology requires that it be treated differently from earlier P2P technologies for the purposes of joinder. *See Boy Racer v. John Does 2–52.* Case No. 11–2834, N.D. Cal., Docket No. 12. After receiving supplemental briefing on the question from the plaintiffs, he concluded that it should not, reasoning as follows:

... to distinguish the technical architecture of BitTorrent from those file-sharing protocols which other courts have found failed to justify joinder, Boy Racer explains that users of the BitTorrent protocol have a higher degree of interactivity and engage in "deep and sustained collaboration with their peers," as follows:

First, the protocol breaks a single large file into a series of smaller distributable pieces. Then, an initial file-provider (the "seeder") intentionally elects to distribute the pieces to third parties. This is called "seeding." Other users ("peers") on the network, download a small "torrent" file that contains directions on where to find the seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent software, and the software follows the directions on where to find the seeder as well as an index of the pieces. The torrent file is loaded into BitTorrent software, and the software follows the directions in the torrent file to connect to the seeder. When a piece download is complete, the peers automatically become seeders with respect to the downloaded pieces. In other words, each peer in a swarm transforms from a pure downloader (a "leecher" in BitTorrent vernacular) to a peer that is simultaneously downloading and distributing pieces of a file. By this mechanism, each peer collaborates with others in the swarm to complete the distribution of a file.

A piece shared by the initial seeder or any later seeders will be distributed amongst the peers countless times over—even if the seeder leaves the swarm. Users can be connected to one another over the span of weeks simply via the initial download.

Boy Racer goes on to note:

The BitTorrent file distribution protocol leads to a rapid viral spreading of a file through willful peer users, all of whom are both intentionally uploading and downloading portions of the file simultaneously. As more peers intentionally join the swarm for the copyrighted works, the likelihood of a successful download increases. Due to the nature of the BitTorrent protocol, any peer that has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible, and even a likely, source of the file for the subsequent peer. Indeed, a majority of the prominent adult content torrent-indexing websites mandate that users maintain a minimum upload/download ratio, which means that users who download a file via the BitTorrent protocol are highly likely to serve as seeders in order to assure that they meet ratio requirements. Essentially, because of the nature of the swarm downloads, every infringer is simultaneously illegally downloading and distributing copyrighted material through collaboration from many other infringers, through a number of ISPs, in numerous jurisdictions around the country—although this lawsuit is isolated to peers who are believed to be located exclusively in California.

According to Boy Racer, this greater extent of "cooperation and concerted action" among BitTorrent users than

among users of other protocols makes joinder proper here.

Even with the description of the Bit-Torrent technology provided by Mr. Hansmeier, the court remains unpersuaded that the peer-to-peer architecture of the BitTorrent technology justifies the joinder of otherwise unrelated defendants in a single action. First, the Hansmeier declaration argues at length about the "concerted activity" within a *given* swarm. Presumably he does so in response to the concern highlighted by Judge Ryu that users in *different* swarms have nothing in common other than downloading the same work, which as this court and others have noted is insufficient under our precedent. But the Hansmeier declaration itself offers overwhelming evidence that the IP addresses were in fact gathered from multiple swarms. Second, even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses "acted in concert" with all of the others. In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case. In this age of instant digital gratification, it is difficult to imagine, let alone believe, that an alleged infringer of the copyrighted work would patiently wait six weeks to collect the bits of the work necessary to watch the work as a whole. At the very least, there is no proof that bits from each of these addresses were ever assembled into a single swarm. As the court previously explained, under this court's precedent regarding other file sharing protocols, merely infringing the same copyrighted work over this period is not enough. Finally, nothing in the BitTorrent architecture changes the fact that each defendant also will likely have a different defense. As the district court in *BMG Music* put it:

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed.

Docket No. 12 at 3–6.

■ Here, the Court finds the reasoning in *Boy Racer* and *Diabolic Video Productions, Pacific Century International,* and *Millennium TGA* persuasive. Does 1–188 did not participate in the same transaction or occurrence, or the same series of transactions or occurrences. Under the BitTorrent Protocol, it is not necessary that each of the Does 1–188 participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the downloading by any of the Does 1–188. Any "pieces" of the work copied or uploaded by any individual Doe may have gone to any other Doe *or to any of the potentially thousands who participated in a given swarm.* The bare fact that a Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world.

Moreover, the court notes that the declaration submitted in this action, like the declaration in *Boy Racer,* appears to contradict the assertion that the Does named in this action are part of a single swarm. *See* Hansmeier Decl., ¶ 13 ("[the first step in the infringer-identification process is to locate swarms where peers are distributing the copyrighted creative works."); ¶ 14

("I used all three methods to locate swarms associated with Plaintiff's exclusive license."). Further, although Hansmeier states that he "collected data on the peers in the swarm, including what activities each peer was engaging in and other important such as the date and time that each Defendant was observed by the software as engaging in infringing activity," the exhibit attached to the complaint reflects that the activity of the different IP addresses occurred on different days and times over a two-week period. *Id.* at ¶ 15. Indeed, Plaintiff concedes that while the Doe Defendants may have participated in the same swarm, "they may not have been physically present in the swarm on the exact same day and time." Application at 18; Complaint, Ex. A. As a result, the Court finds unpersuasive the allegation that the Does acted in concert. Therefore, the Court concludes that joinder of the Doe Defendants in this action does not satisfy Rule 20(a).

### 2. Discretionary Severance

██ Even if joinder of the Doe Defendants in this action met the requirements of Rule 20(a) of the Federal Rules of Civil Procedure, the Court finds it is appropriate to exercise its discretion to sever and dismiss all but one Doe Defendant to avoid causing prejudice and unfairness to Defendants, and in the interest of justice. *See Wynn,* 234 F.Supp.2d at 1088.

First, permitting joinder in this case would undermine Rule 20(a)'s purpose of promoting judicial economy and trial convenience because it would result in a logistically unmanageable case. *See Bridgeport Music, Inc. v. 11C Music,* 202 F.R.D. 229, 232–33 (M.D.Tenn.2001) (holding permissive joinder of 770 putative defendants would not promote judicial economy because the court's courtroom could not accommodate all of the defendants and their attorneys, and therefore could not hold case management conferences and could not try all of plaintiff's claims together). Second, permitting joinder would force the Court to address the unique defenses that are likely to be advanced by each individual Defendant, creating scores of mini-trials involving different evidence and testimony. In this respect, the Court also notes that in Exhibit A to the Complaint there are listed at least thirteen different internet service providers associated with Doe Defendants, which could also give rise to different ISP-specific defenses, evidence, and testimony. *See* Complaint, Ex. A.

Finally, the Court finds that permissive joinder of the Doe Defendants does not comport with the "notions of fundamental fairness," and that it will likely cause prejudice to the putative defendants. *See Coleman,* 232 F.3d at 1296. The joinder would result in numerous hurdles that would prejudice the defendants. For example, even though they may be separated by many miles and have nothing in common other than the use of BitTorrent, each defendant must serve each other with all pleadings—a significant burden when, as here, many of the defendants will be appearing *pro se* and may not be e-filers. Each defendant would have the right to be at each other defendant's deposition—creating a thoroughly unmanageable situation. The courtroom proceedings would be unworkable—with each of the 188 Does having the opportunity to be present and address the court at each case management conference or other event. Finally, each defendant's defense would, in effect, require a mini-trial. These burdens completely defeat any supposed benefit from the joinder of all Does in this case, and would substantially prejudice defendants and the administration of justice.

Moreover, the Court notes that Plaintiff's allegation that all Doe Defendants meet the Rule 20(a) joinder requirements is speculative and conclusory. For exam-

ple, while Plaintiff asserts that Doe Defendants conspired with each other to download the work, Plaintiff also asserts that "each defendant is a *possible* source of Plaintiff's file, and *may* be responsible for distributing the file to the other defendants." Application at 19 (emphasis added). Plaintiff also concedes the Doe Defendants "may not have been physically present in the swarm on the exact same day and time." Application at 18; Complaint, Ex. A. In light of Plaintiff's uncertainty about the role of each particular Doe Defendant and the relationship between the Doe Defendants, the Court finds it appropriate to exercise its discretion to sever all of the Doe Defendants but one in the interest of fairness. The Court rejects Plaintiff's assertion that severing the Doe Defendants would "practically prevent copyright holder plaintiffs from being able to protect their material," as the Court's severance does not preclude Plaintiff from filing individual copyright infringement actions against each Doe Defendant. Application at 23.

## V. CONCLUSION

For the reasons stated above, the Court severs all Doe Defendants except Doe Defendant at IP address 173.55.54.77 (the first Doe Defendant listed in Exhibit A to the Complaint that has not been dismissed from the action). Because the Doe Defendant at IP address 24.5.180.56 has been dismissed from the action, the subpoena against that Doe Defendant is no longer in effect. Accordingly, the Motion to Quash is Granted on that basis. Moreover, because all severed Doe Defendants have now been dismissed, all subpoenas seeking discovery regarding all Doe Defendants except Doe 173.55.54.77 are ordered QUASHED. The claims against the severed Doe Defendants are DISMISSED without prejudice to refiling in separate actions.

IT IS SO ORDERED.